# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| VERNICE LOUISE HILL, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 4:20-cv-1033-SPM |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1] | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Vernice Louise Hill ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I.    PROCEDURAL BACKGROUND

In October 2018, Plaintiff applied for DIB, alleging that she had been unable to work since July 30, 2016, due to depression, "feet problems," post-traumatic stress disorder, and anxiety. (Tr. 80, 202). Her application was initially denied. (Tr. 94-98). On February 5, 2019, Plaintiff filed a

---

[1]    Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Request for Hearing by Administrative Law Judge (ALJ) (Tr. 99-101). After a hearing, the ALJ issued an unfavorable decision on December 31, 2019. (Tr. 30-40). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on January 21, 2020 (Tr. 156-57), but the Appeals Council declined to review the case on July 7, 2020. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND

At the October 2019 hearing, Plaintiff testified as follows. Plaintiff was 53 years old and a retired veteran who served for eight years. (Tr. 50-52). She lives alone, has a driver's license, and does drive but not on the highway. (Tr. 52-53). She does not have any mental or physical issues that limit her ability to drive. (Tr. 52). She has not worked since 2015 but did own a car wash from 2010 to 2016. (Tr. 53-54). She was also a letter carrier for the United States Postal Service (USPS), which was a mostly standing job. (Tr. 54).

Plaintiff also testified that most days she does not want to do anything, she just cries and does not have energy to do anything. (Tr. 55). She also cannot sleep at night and gets maybe three hours. (Tr. 55). She also stated that she has pain in her feet, and she cannot walk like she used too and cannot walk far. (Tr. 56). She sits in her house and some days she is able to do household chores, like make her bed and water her plants, but she has a lot of doctors' appointments with the Department of Veterans Affairs (VA). (Tr. 56-57). She goes to meditation classes, a "moods class," and she sees her therapist on a weekly basis. (Tr. 56). She testified she does not have a lot of chores right now because her teenage daughter does not currently live with her, because she is "not [her]self right now." (Tr. 57). She was going through therapy where she had to relive her past which was not comfortable and emotional. (Tr. 57).

She indicated the only comfortable position was laying down because of her feet and her mind. (Tr. 58). Since she stopped working, she said that her house is a mess, and everything is out of order. (Tr. 60). She frequently checks the doors and locks in her home. (Tr. 60). She avoids situations involving men and is defensive if she is around a lot of men. (Tr. 61). It does affect her ability to concentrate sometimes, but she likes to go to church and is at the VA all the time, but her guard is up. (Tr. 63). She sometimes has flashbacks and her recovery period from these differs. (Tr. 63-64). Plaintiff does not bathe or change her clothes every day because she does not care and is unable to get out of bed. (Tr. 64-65). There are some days where she does not eat. (Tr. 65).

She has had surgery on both feet but tries not to use an assistive device. (Tr. 66). She has a cane but does not use it for the most part and does not want to walk around with a cane (Tr. 66-67). Regarding her PTSD, she does have triggers such as men in authority and tall men. (Tr. 67). Regarding her depression, she does not know what the triggers are, and she just gets depressed. (Tr. 68). When asked if therapy was helping, she said "[i]t is, I guess. [My therapist] says it is. I don't know." (Tr. 68).

Regarding Plaintiff's medical and vocational records, the Court accepts the facts as set forth in the parties' statements of facts and responses. The Court will cite to specific records as necessary to address the parties' arguments.

III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### IV.   THE ALJ'S DECISION

Here, the ALJ applied the five-step analysis. (Tr. 32-40). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 30, 2016, the alleged onset date. (Tr. 32). At step two, the ALJ found that Plaintiff had the severe impairment(s) of major depressive disorder, post-traumatic stress disorder, digital nerve compression syndrome in bilateral feet, and reconstructive surgery of weight bearing joint. (Tr. 33). At step three, the ALJ found that Plaintiff

5

did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 33).

The ALJ found that Plaintiff had the following RFC:

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except as follows. She can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to operational control of moving machinery and exposure to hazardous machinery. She should avoid concentrated exposure to operational control of moving machinery and exposure to hazardous machinery. She should avoid unprotected heights. Her work is limited to simple, routine and repetitive tasks. Her work should be in a low stress job, defined as having only occasional changes in the work setting. She should have only occasional interaction with the public. She should have only occasional interaction with co-workers and supervisors.

(Tr. 35). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 38). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age, education, work experience, and RFC, the ALJ relied on the testimony of the vocational expert and found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform (Tr. 39), such as housekeeping, laundry worker, and assembly of small products. (Tr. 40). The ALJ concluded that Plaintiff "has not been under a disability . . . from July 30, 2016, through the date of th[e] decision." (Tr. 40).

V.  **DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds: (1) "[t]he findings of the [RFC] do not find support in some medical evidence"; and (2) "[t]he hypothetical question of the vocational expert fails to capture the concrete consequences of Plaintiff's impairment, and therefore, the vocational expert's responses are not substantial evidence[.]" (Doc. 21 at 5) (emphasis and capitalization omitted).

Responding, the Commissioner argues that "[t]he ALJ properly considered all of the evidence, including the opinion evidence, in determining Plaintiff's RFC." (Doc. 26 at 5)

6

(emphasis and some capitalization omitted). The Commissioner also argues that because the RFC was supported by substantial evidence, the hypothetical to the vocational expert mirroring this RFC and excluding limitations found to be non-consistent with the record was proper. (*Id.* at 14).

### A. Standard for Judicial Review

This Court must affirm the decision of the Commissioner if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings,

the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B.  The RFC was Supported by Substantial Evidence

Plaintiff's first argument is the ALJ's RFC assessment is not supported by substantial evidence. Plaintiff points to two reasons for support. First, Plaintiff contends that the ALJ's decision fails to outline a legally sufficient rationale for discarding third-party evidence. (Doc. 21 at 7). More specifically, Plaintiff contends the ALJ improperly discounted the opinions of Gary Miller, M.D., Chief of Orthopedic Surgery at the VA; medical evidence from the VA; evidence and findings from USPS; and a third-party function report completed by Kenneth A. Scott, a friend who had known Plaintiff for over thirty years. (*Id.* at 7-13). Second, Plaintiff argues that the ALJ did not comment upon evidence from the VA's records in any meaningful way which she submits detracts from the conclusion by the ALJ that her mental status findings were unremarkable. (*Id.* at 18).

Responding, the Commissioner argues (as to Plaintiff's first point) that the objective medical evidence and Plaintiff's daily activities were inconsistent with Plaintiff's allegations of disabling impairments. (Doc. 26 at 7, 8). Further, the Commissioner argues that "the ALJ properly considered the lack of support for Dr. Miller's opinion;" "[t]he ALJ appropriately concluded that disability findings made by the [VA] and [USPS] were not probative in deciding Plaintiff's claims for benefits under the [Act]" because these agencies use different rules in adjudicating disability claims. (*Id.* at 11, 13). As to Mr. Scott's report, the Commissioner contends that under the new rules, "there is no particular articulation requirement regarding nonmedical evidence" and even so, "the ALJ did not ignore the evidence from [Mr. Scott] because he discussed [Mr. Scott's] statements regarding Plaintiff's activities in his decision." (*Id.* at 14). As to Plaintiff's second argument, the Commissioner asserts "[t]he ALJ properly considered that Plaintiff's depression and

8

anxiety symptoms improved with medication" in that the "medication was effective in treating Plaintiff's depression and anxiety and related irritability, concentration, and persistence symptoms." (*Id.* at 3, 6).

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Here, Plaintiff has been previously found disabled by the VA and was medically retired from USPS. However, these disability findings do not automatically amount to a finding of disability under the Social Security Administration as stated under the relevant statute:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . the Office of Personnel Management . . . — make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed [ ] on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504. Because a disability determination by another government agency is based on the government agency's own rules and not on social security law, it is not binding on the Commissioner. *See id. See also Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) ("While the ALJ should consider the disability findings of other agencies, [a

9

Veterans Affairs] disability rating is not binding on the commissioner.") (citing *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) & 20 C.F.R. § 404.1504). *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) ("[W]hether or not [the plaintiff] was disabled under Iowa law is not binding on the Commissioner of Social Security.") (citing 20 C.F.R. § 404.1504).

Regardless, the ALJ was required to consider the underlying evidence from Dr. Miller, the VA, and USPS. The ALJ did so. (Tr. 33-38). As to Dr. Miller, the ALJ specifically found the following:

> The opinion at Exhibit 6F regarding [Plaintiff]'s need to retire from the U[SPS] is neither persuasive or not persuasive for the same reasons mentioned with regard to the VA. Again, however, the underlying medical records were taken into account and cited above in determining [Plaintiff]'s disability claim. The medical opinion at Exhibit 6F, that [Plaintiff] is incapable of physical endurance, negotiating ambulation, climbing stairs, and working within the confines of light duty is unsupported by citation to medical evidence, and it is inconsistent with the record. As discussed, [Plaintiff]'s gait is consistently normal, the claimant is able to shop in stores and live independently (doing housework and cooking), and clinical findings are minimal. Treatment is minimal, with evidence [Plaintiff] only takes pain medication for foot issues. The record fails to support the extreme limitations offered at Exhibit 6F.

(Tr. 38). Thus, the ALJ explained his reasoning for finding Dr. Miller's opinion neither persuasive nor non-persuasive. Plaintiff's argument that the ALJ did not provide a legally sufficient rationale for discarding Dr. Miller's opinion is without merit. The ALJ followed the applicable regulations and did provide context surrounding his treatment of Dr. Miller's opinion. The ALJ was not required to do more.

As to the evidence from the VA and USPS, the ALJ was not required to provide any analysis about the other agencies' disability determinations. 20 C.F.R. § 404.1504. He was only required to "consider all of the supporting evidence underlying the other governmental agency . . . decision that [the Social Security Administration] receive[s] as evidence in [the claimant's] claim in accordance with § 404.1513(a)(1) through (4)." 20 C.F.R. § 404.1504. Section 404.1513(a)(1)-

10

(4) refers to objective medical evidence, medical opinion(s), other medical evidence, and evidence from nonmedical sources. 20 C.F.R. § 404.1513(a)(1)-(4). Here, it is clear that the ALJ considered the medical evidence from the VA and USPS as the ALJ cites to these records throughout his decision. (Tr. 33-38). Therefore, the ALJ did not err because he did consider the evidence from the other governmental agencies and his conclusions regarding the weight to afford that evidence are supported by substantial evidence.

Moving to Mr. Scott's third-party function report, although the ALJ could have provided more analysis, the ALJ is not required to articulate how he considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d). Nevertheless, the ALJ did mention Mr. Scott's report in his decision right after discussing Plaintiff's activities of daily living. (Tr. 37). The ALJ first summarized Plaintiff's activities according to her, and then moved on to discuss Mr. Scott's report, which largely mirrors Plaintiff's contentions. (Tr. 37). To the extent Plaintiff suggests the ALJ did not consider third-party evidence in sufficient detail, where the same evidence that supports discounting the testimony of the claimant also supports discounting the testimony of a third-party, the ALJ's failure to fully address the assertions of third parties is "inconsequential." *Tindall–kolthoff v. Colvin*, No. 2:15CV46NCC, 2016 WL 5390934, at *11 (E.D. Mo. Sept. 27, 2016) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)); *see also Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 2006). Here, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical and other evidence of record. (Tr. 36). Because Mr. Scott's report mirrors Plaintiff's testimony, the same reasons the ALJ gave for discounting that testimony apply to Mr. Scott's report. Thus, the ALJ's failure to specify what weight he gave Mr. Scott's report is "inconsequential." *See Tindall–kolthoff*, 2016 WL 5390934, at *11.

11

For all of the above reasons, the Court finds that the ALJ's RFC assessment was supported by substantial evidence. The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). *See also Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) ("[T]his Court will disturb the ALJ's decision only if it falls outside the available 'zone of choice.'").

### C. The Hypothetical was Sufficient

Plaintiff's second argument is that because the ALJ's RFC assessment does not find support in some medical evidence, the hypothetical question to the vocational expert did not capture the concrete consequences of Plaintiff's impairment. (Doc. 21 at 20). Because of this, according to Plaintiff, the vocational expert's testimony is not substantial evidence. (*Id.*).

Responding, the Commissioner argues that "substantial evidence supports the ALJ's RFC determination, so the ALJ's hypothetical question mirroring [this] RFC finding properly included those impairments the ALJ found supported by the evidence and excluded those he discredited for legally-sufficient reasons[.]" (Doc. 26 at 14).

At Step Five, it is the Commissioner's burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. § 404.1560(c)(1)). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "For guidance on such questions, ALJs often seek the views of 'vocational experts.'" *Biestek*, 139 S. Ct. at 1152. Vocational experts "are professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings." *Id.*

12

"They must have expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs.'" *Id.* (internal quotation marks and alterations omitted). "Many vocational experts simultaneously work in the private sector locating employment for persons with disabilities." *Id.*

"When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Id.* at 1152-53 (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2). It is well established that "[t]he Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). "A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff appears to argue that because the RFC was not supported by substantial evidence, the hypothetical question to the vocational expert mirroring that RFC was erroneous. However, as discussed more fully above, the RFC assessment is supported by substantial evidence. As such, the ALJ was not required to include limitations he found inconsistent with the record. In sum, the Court finds that the ALJ properly included all the limitations he found supported by the record in the hypothetical question he posed to the vocational expert, and the vocational expert indicated that such an individual could perform work existing in significant numbers in the national economy. Thus, the ALJ's finding at Step Five was supported by substantial evidence.

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2022.